1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
                     AT SEATTLE

9

10   UNITED STATES OF AMERICA,              CASE NO. CR09-0044JLR

11                    Plaintiff,            ORDER GRANTING MOTION
                                            TO DISMISS PETITION
12            v.

13   ROBERT STUBER,

14                    Defendant.

15         This matter comes before the court on Plaintiff the United States of America's

16   ("the Government") motion to dismiss Petitioner Columbia State Bank's ("the Bank")

17   petition for a hearing regarding seized assets (Dkt. # 33).  The Bank claims an interest in

18   a portion of the $275,751.29 in forfeited funds seized from a checking deposit account

19   held in the name of Mr. Stuber's business, Cowlitz Candy and Tobacco, Inc. ("Cowlitz

20   Candy").  (*See* Petition (Dkt. # 31).)  The Government contends that the Bank cannot

21   meet its burden to show, by a preponderance of the evidence, that it has a right to the

22

1  forfeited funds.  Having reviewed the submissions of the parties, the court GRANTS the

2  Government's motion to dismiss (Dkt. # 33).

3  **I.   BACKGROUND**

4         This forfeiture proceeding arises out of Mr. Stuber's plea of guilty to the offenses

5  of conspiracy to traffic in contraband cigarettes in violation of 18 U.S.C. §§ 2342(a) and

6  371, and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h).

7  (Plea Agreement (Dkt. # 7); Order of Acceptance of Plea (Dkt. # 11).)  The charging

8  document alleged that $275,751.59 seized from Mr. Stuber's deposit account at the Bank

9  (the "deposit account") was subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and

10  28 U.S.C. § 2461(c) as property constituting or derived from proceeds traceable to the

11  offense of conspiracy to traffic cigarettes.  (Dkt. # 1.)  In his plea agreement, Mr. Stuber

12  admitted that he committed the charged offenses beginning in January 2005 and

13  continuing through May 15, 2007.  (Plea Agreement ¶ 12.)  He further agreed to forfeit

14  his interest in all proceeds traceable to his violation of 18 U.S.C. § 2342(a), including the

15  funds seized from the deposit account and "one Hyster Model 141 H Forklift with serial

16  number 120V019422" (the "forklift").  (Plea Agreement ¶ 16.)  On December 14, 2009,

17  the court entered a preliminary order of forfeiture pursuant to Federal Rule of Criminal

18  Procedure 32.2(b).  (Dkt. # 25.)  The Government published notice of the forfeiture

19  pursuant to 21 U.S.C. § 853(n)(1) from January 23, 2010 through February 21, 2010.

20  (Dkt. # 32.)

21

22

ORDER- 2

1    On February 5, 2010, the Bank filed a petition asserting that it had a security

2    interest in the forklift and in a portion of the funds seized from the deposit account.[1]  (*See*

3    Petition.)  The Bank contended that its claims were based on (1) a security interest in the

4    funds arising from the deposit account agreement signed by Mr. Stuber when he opened

5    the deposit account (the "Deposit Account Agreement"); and (2) a security interest in

6    both the forklift and the funds arising from a security agreement executed pursuant to a

7    promissory note for a business loan the Bank made to Cowlitz Candy in March 2006.

8    (*Id.* ¶¶ 1, 2; *id.* Ex. B ("Security Agreement").)  According to the Bank, the balance due

9    on Cowlitz Candy's promissory note was $51,362.46 as of February 4, 2010.  (*Id.* ¶ 2.)

10    The Bank asserted two grounds for its entitlement to the property.  First, the Bank

11    asserted that its "interest in the property vested prior to [Mr. Stuber's] commission of the

12    acts which gave rise to the Government's seizure of the property."  (*Id.*)  Second, the

13    Bank alleged that it was a "bona fide purchaser for value of its interest in" the forklift and

14    the funds and "was reasonably without cause to believe that the property was subject to

15    forfeiture at the time of the purchase."  (*Id.*)  The Bank also sought "attorney's fees and

16    costs incurred due to the Government's forfeiture actions."  (*Id.*)  The Bank attached to

17    its petition copies of the promissory note, the Security Agreement, and a UCC-1

18    Financing Statement; it did not attach any documentation regarding the Deposit Account

19    Agreement.  (*Id.* Exs. A-C.)

20    On July 7, 2010, the Government filed the instant motion to dismiss.  (Dkt. # 33.)

21

22    [1] No other entity filed a petition asserting an interest in the forfeited property.

# II.   ANALYSIS

Under 21 U.S.C. § 853(a), a person convicted of certain crimes shall forfeit to the United States (1) "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the criminal conduct; or (2) "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of," the crime.  Title to the forfeited property vests in the United States at the time the defendant commits the unlawful acts.  21 U.S.C. § 853(c); *see United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005).

A third party asserting an interest in the property to be forfeited may not intervene in the criminal proceeding, nor may it bring a separate action against the United States concerning its interest in the property.  21 U.S.C. § 853(k).  Rather, the procedure by which a third party challenges a forfeiture is set forth in 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2.  A third party "asserting a legal interest in property which has been forfeited to the United States pursuant to [§ 853] may, within thirty days of [notice], petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  21 U.S.C. § 853(n)(2).  "The petition . . . shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought."  21 U.S.C. § 853(n)(3).  The court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason.  Fed. R. Crim. P. 32.2(c)(1)(A).  In

1  evaluating a motion to dismiss a petition, the court assumes that the facts set forth in the

2  petition are true. *Id.*

3          An ancillary proceeding pursuant to § 853(n) and Rule 32.2(b) provides third-

4  party claimants an "opportunity to challenge the forfeiture by asserting a superior interest

5  in the property." Fed. R. Crim. P. 32.2(b) advisory committee's note.  Importantly,

6  "[t]his proceeding does not involve relitigation of the forfeitability of the property; its

7  only purpose is to determine whether any third party has a legal interest in the forfeited

8  property." *Id.*; *see United States v. Lazarenko*, 575 F. Supp. 2d 1139, 1146-50 (N.D. Cal.

9  2008) (holding, following a detailed analysis, that the plain language of § 853(n) and

10  Rule 32.2 bar a petitioner from relitigating the forfeitability of seized funds).  The

11  petitioner's burden in the ancillary proceeding is to establish by a preponderance of the

12  evidence either (A) that it had a right, title, or interest in the property that was vested or

13  superior to that of the defendant at the time the commission of the acts giving rise to the

14  forfeiture took place; or, (B) if the petitioner obtained the property after the acts giving

15  rise to the forfeiture took place, that it was a bona fide purchaser for value of the interest

16  in the property and "was at the time of the purchase reasonably without cause to believe

17  that the property was subject to forfeiture[.]"  21 U.S.C. § 853(n)(6)(A)-(B).  "Federal

18  forfeiture statutes govern the disposition of property, but state law determines what

19  rights, title or interests the various claimants possess in that property." *Nava*, 404 F.3d at

20  1128-29.

21

22

**A.    Preliminary Matters**

1.  The Forklift

In its Petition, the Bank contends that it had a superior interest in the forklift based on the Security Agreement.  In its reply, the Government states that it learned, following the entry of the Preliminary Order of Forfeiture, that the forklift was not actually the property of Mr. Stuber; rather, the forklift belonged to Mr. Stuber's co-conspirator Jay Silverman.  (Reply at 9; 2d Cohen Decl. (Dkt. # 40) Ex. A.)  The Government asks the court to modify the preliminary order of forfeiture and omit the forklift from the court's final order of forfeiture.

Because the Government concedes that forklift was not Mr. Stuber's property, the forklift is not subject to criminal forfeiture under § 853(a).  *See Lazarenko*, 575 F. Supp. 2d at 1153 ("It is axiomatic that a criminal forfeiture—as opposed to a civil forfeiture—is an in personam proceeding, and therefore the government may seize only that property or portion of property in which the defendant has an interest.")  Accordingly, the court modifies the preliminary order of forfeiture to omit the forklift.

2.  Statutory Basis for Forfeiture

In its response to the Government's motion, the Bank contends that there is no statutory basis for ordering the forfeiture of the seized property.  (Resp. (Dkt. # 35) at 4.)  This challenge fails.

According to the charging document and the preliminary order of forfeiture, the Government sought forfeiture of the funds in the deposit account pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C).  (Dkt. ## 1, 25.)  Under 28 U.S.C. § 2461(c), if a

1  defendant is convicted of an offense giving rise to forfeiture, as alleged in the charging

2  document, then "the court shall order the forfeiture of the property as part of the sentence

3  in the criminal case," and specifies that the procedures in 21 U.S.C. § 853 apply to the

4  criminal forfeiture proceeding.  Under 18 U.S.C. § 981(a)(1)(C), "any property, real or

5  personal, which constitutes or is derived from proceeds traceable to a violation of . . . any

6  offense constituting 'specified unlawful activity' (as defined in [18 U.S.C. § 1956(c)(7)]),

7  or a conspiracy to commit such offense" is subject to forfeiture.  Section 1956(c)(7)

8  includes, among the definitions of 'specified unlawful activity', "any act or activity

9  constituting an offense listed in [18 U.S.C. § 1961(1)] . . . ."  Section 1961(1), in turn,

10  defines "racketeering activity" as including "any act which is indictable under . . . [18

11  U.S.C. §§] 2341-2346 (relating to trafficking in contraband cigarettes)[.]"

12      Here, Mr. Stuber was convicted of conspiracy to traffic in contraband cigarettes in

13  violation of 18 U.S.C. §§ 371 and 2342(a), and Mr. Stuber agreed to forfeit the funds in

14  the deposit account because they constituted proceeds traceable to his violation of §

15  2342(a).  Accordingly, the court finds that the Government has properly alleged a

16  statutory basis for the forfeiture of the funds in the deposit account.

17      3.  The Forfeitability of the Funds

18      The Bank also contends that the Government "failed to establish that all of the

19  seized funds constituted proceeds of the unlawful activity."  (Resp. at 7.)  The Bank

20  asserts that Cowlitz Candy made "significant deposits and withdrawals each month" that

21  were unrelated to Mr. Stuber's unlawful activity and that, as a result, the court must hold

22  an evidentiary hearing to determine which assets were forfeitable.  (Id.)  The court

1  disagrees.  As stated above, the Advisory Committee Notes to Federal Rule of Criminal

2  Procedure 32.2(b) make clear that an ancillary proceeding pursuant to 21 U.S.C. § 853(n)

3  "does not involve relitigation of the forfeitability of the property; its only purpose is to

4  determine whether any third party has a legal interest in the forfeited property."  *See also*

5  *Lazarenko*, 575 F. Supp. 2d at 1146-50.  Rather, a third-party petitioner may obtain relief

6  only by demonstrating that it has superior title, either because its right, title, or interest

7  vested before the acts giving rise to the forfeiture took place, or because it was a bona

8  fide purchaser for value.  *Id.* at 1147 (citing 21 U.S.C. § 853(n)(6)).  Accordingly, the

9  court cannot consider the Bank's challenge to the forfeitability of the funds in the deposit

10 account in this ancillary proceeding.

11 **B.    Vested or Superior Interest**

12         Under 21 U.S.C. § 853(n)(6)(a), a third-party petitioner may prevail in an ancillary

13 proceeding by demonstrating, by a preponderance of the evidence, that it had a right, title,

14 or interest in the property that was "vested in the petitioner rather than the defendant or

15 was superior to any right, title or interest of the defendant at the time of the commission

16 of the acts which gave rise to the forfeiture."  21 U.S.C. § 853(n)(6)(a).  That is, to

17 qualify for relief under this section, the Bank must show that its legal interest, if any,

18 vested by January 2005, when Mr. Stuber's criminal conduct commenced.  *See United*

19 *States v. Hooper*, 229 F.3d 818, 821 (9th Cir. 2000).

20         1.   No Vested or Superior Interest Based on the Security Agreement

21         On March 6, 2006, Mr. Stuber, as President of Cowlitz Candy, took out a small

22 business loan in the amount of $443,000 from the Bank.  (*See* Petition Ex. A.)  In

ORDER- 8

connection with the loan, Mr. Stuber signed a Security Agreement granting the Bank a

security interest in all of Cowlitz Candy's equipment, inventory, accounts, and general

intangibles, along with all proceeds of this collateral.  (*Id.* Ex. B.)  On the same day, the

Bank filed a UCC-1 filing statement recording its first perfected security interest in the

collateral described in the Security Agreement.  (*Id.* Ex. C.)

Under Washington's version of the Uniform Commercial Code ("UCC"), a

security interest is "an interest in personal property or fixtures which secures payment or

performance of an obligation . . . ."  RCW 62A.1-201(37).  A security agreement is "an

agreement that creates or provides for a security interest."  RCW 62A.9A-102(73).  The

security agreement must identify the collateral such that the identity of the collateral is

objectively determinable.  RCW 62A.9A-108(b).  "A security interest attaches to the

collateral when it becomes enforceable against the debtor with respect to the collateral."

RCW 62A.9A-203(a).  A security interest is enforceable against the debtor and third

parties with respect to the collateral only if (1) value has been given; (2) the debtor has

rights in the collateral; and, relevant to the instant case, (3) either the "debtor has

authenticated a security agreement that provides a description of the collateral" or the

collateral is deposit accounts and the secured party has control "pursuant to the debtor's

security agreement."  RCW 62A.9A-203(b).

The court finds that the Security Agreement could not have created a vested or

superior interest in the Bank in either the deposit account or the proceeds of Cowlitz

Candy's inventory.  First, the Security Agreement did not create an enforceable security

interest in the deposit account because it did not identify the deposit account as collateral.

The definitions of both "accounts" and "general intangibles" under Article 9 of the UCC expressly exclude deposit accounts, RCW 62A.9A-102(2)(B)(iii), (42).  Accordingly, because the Security Agreement did not identify the deposit account, no security interest could attach to the deposit account.  Second, a security interest in the proceeds of Cowlitz Candy's inventory under the Security Agreement could arise no earlier than March 6, 2006—long after Mr. Stuber began to commit the acts which gave rise to the forfeitability of the funds in the deposit account.  As a result, the Security Agreement does not support a finding that the Bank had a vested or superior interest in the funds at the time the commission of the acts giving rise to the forfeiture took place.  *Hooper*, 229 F.3d at 821.

    2.  No Vested or Superior Interest Based on the Deposit Account Agreement

In its response, the Bank asserts that it has a vested or superior interest in the funds based on the Deposit Account Agreement.  Mr. Stuber opened his deposit account at the Bank on January 28, 2004, nearly a year before he began his criminal conduct.  (Rouff Decl. (Dkt. # 36) Ex. B.)  The account is governed by the Deposit Account Agreement.  (*Id.* Ex. A.)  The Deposit Account Agreement does not include language referring expressly to a security interest.  Rather, the Bank contends that the language of the following offset provision evidenced Mr. Stuber's intent to grant the Bank a security interest in the deposit account:

**Offset**

Within the limits of the law, we may deduct from your account the amount of any claim that we may hold against you, regardless of whether the claim arises directly out of your account.

(*Id.* at 6.)

      *a.   Security Interest*

First, the Bank asserts that it had a vested or superior interest in the deposit account based on the offset provision in the Deposit Account Agreement.  Although the Deposit Account Agreement makes no mention of a security interest, the Bank contends that whether the Deposit Account Agreement's offset provision granted a security interest in the deposit account is a question of fact that cannot be decided on a motion to dismiss. (Resp. at 6.)  The Bank argues that, assuming the Deposit Account Agreement is a valid security agreement, the statutory requirements for an attached and perfected security interest were met because (1) the Bank gave value by providing Mr. Stuber and Cowlitz Candy the deposit account; (2) Mr. Stuber had rights in the collateral "other than to the extent the assets of the Account constituted proceeds of contraband" (Resp. at 6); and (3) the Bank had control over the deposit account.  *See* RCW 62A.9A-203(b); RCW 62A.9A-104(a).

Even if the Deposit Account Agreement created a valid security interest in the deposit account, the Bank cannot demonstrate that it has a vested or superior interest in the funds in the account.  Mr. Stuber admitted in his plea agreement that the funds in his deposit account constituted or were derived from proceeds traceable to his criminal conduct.  (Plea Agreement ¶ 16.)  As the Bank acknowledges, Mr. Stuber did not have rights in those funds that constituted proceeds of criminal conduct.  (Resp. at 6; *see Hooper*, 229 F.3d at 222.)  Accordingly, even if the Deposit Account Agreement could be

1  construed as a security agreement, the Bank cannot demonstrate an enforceable security

2  interest entitling it to the funds in the account.

3     *b.  Right of Offset*

4     Second, the Bank contends that it had a vested or superior interest in the funds

5  based on its right of offset as provided in the offset provision of the Deposit Account

6  Agreement.  (*See* Rouff Decl. Ex. A at 6.)  A bank's right of offset (also called "set off")

7  in a deposit account does not, however, create a vested interest in the deposit account.

8  "While the right of set off is an important one under state law, where it is not timely

9  executed, as here, it remains inchoate and insufficient to establish standing" to assert a

10  claim in an ancillary proceeding.  *United States v. BCCI Holdings (Luxembourg), S.A. (In*

11  *re Petition of Capital Bank)*, 980 F. Supp. 10, 14-15 (D.D.C. 1997).[2]  Rather, for a right

12  of offset "to be effective, the bank must take affirmative steps to establish and

13  memorialize its interest."  *United States v. BCCI Holdings (Luxembourg), S.A. (In re*

14  *Petition of American Express Bank)*, 941 F. Supp. 180, 186 (D.D.C. 1996).  *See also*

15  *Peoples Nat. Bank of Wash. v. United States*, 777 F.2d 459, 461-62 (9th Cir. 1985)

16  (holding that an unexercised right of offset does not create a property interest sufficient to

17  defeat a tax lien).  The Bank has not directed to the court to any authority holding

18  otherwise.

19

---

20    [2] Although the *BCCI Holdings* cases interpreted the forfeiture provisions of 18 U.S.C. §

21  1963, that statute's text is "substantially identical" to the forfeiture provisions of 21 U.S.C. §
853.  *Hooper*, 229 F.3d at 821 n.7.  Accordingly, a court may consider cases discussing both

22  statutes in analyzing either one.  *Id.*

1    Here, it is undisputed that the Bank did not exercise its right of offset before the

2    conduct giving rise to the forfeitability of the funds in the deposit account began.

3    Accordingly, the court finds that the Bank cannot meet its burden to show by a

4    preponderance of the evidence that it had a right, title, or interest in the property that was

5    vested or superior to that of the defendant at the time the commission of the acts giving

6    rise to the forfeiture took place as required to prevail under 21 U.S.C. § 853(n)(6)(A).

7    **C.    Bona Fide Purchaser for Value**

8        Where a petitioner's property interest arose subsequent to the beginning of the

9    criminal conduct, the petitioner must prove by a preponderance of the evidence that it

10   was a "bona fide purchaser for value of the right, title, or interest in the property and was

11   at the time of purchase reasonably without cause to believe that the property was subject

12   to forfeiture under this section."  21 U.S.C. § 853(n)(6)(B).  Thus, the petitioner has the

13   burden of proving the following three elements: "(1) the claimant has a legal interest in

14   the forfeited property; (2) the interest was required as a bona fide purchaser for value;

15   and (3) the interest was acquired at a time when the claimant was reasonably without

16   cause to believe that the property was subject to forfeiture."  *Lazarenko*, 575 F. Supp. 2d

17   at 1150.

18       The Bank's claim fails on the first element.  The Bank contends that it "obtained

19   its security interests and right of setoff as a bona fide purchaser for value" and that it is

20   entitled to the funds because "the Government presents no evidence alleging that

21   Columbia Bank had any reason to believe the property was subject to forfeiture."  (Resp.

22   at 7.)  As explained above, however, the Bank has not demonstrated that it had a legal

ORDER- 13

1    interest in the funds in the deposit account because (1) even if the Deposit Account

2    Agreement were construed as a security agreement, any security interest it granted could

3    not extend to the forfeited funds, which Mr. Stuber admitted were proceeds of his

4    criminal conduct; and (2) no property interest arose from the Bank's unexercised right of

5    offset.  Moreover, it is unclear whether the Bank could establish that it was a "bona fide

6    purchaser for value" in any event.  *See United States v. Watson*, No. 1:06-CR-290, 2010

7    WL 2573478, at *4 (W.D. Mich. June 22, 2010) (holding that traditional "bona fide

8    purchaser for value" protection extends only to holders of tangible assets).  Accordingly,

9    the court finds that the Bank cannot meet its burden to show by a preponderance of the

10   evidence that it was bona fide purchaser for value of its right, title, or interest in the funds

11   and was at the time of purchase reasonably without cause to believe that the funds were

12   subject to forfeiture as required to prevail under 21 U.S.C. § 853(n)(6)(B).

13                          **III.    CONCLUSION**

14         For the foregoing reasons, the court GRANTS the Government's motion to

15   dismiss Columbia State Bank's petition for hearing regarding seized assets (Dkt. # 33)

16   and MODIFIES the preliminary order of forfeiture (Dkt. # 25) to omit the Hyster Model

17   141 H Forklift with serial number 120V019422.  A final order of forfeiture will be filed

18   in conjunction with this order.

19         Dated this 30th day of August, 2010.

20

21   _____

22   JAMES L. ROBART
     United States District Judge